## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JENNIFER ORTEGA,   )<br>    )<br>    Plaintiff,  )<br>    )<br>    v.   )<br>    )<br>CAROLYN W. COLVIN,   )<br>Acting Commissioner of Social Security,  )<br>    )<br>    Defendant.  )<br>_____) | 3:14-CV-0052-LRH-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE**<br><br>October 2, 2014 |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for reversal or remand (#13), defendant's reply (#15) and cross-motion to affirm (#14), and plaintiff's reply to the same (#16).[1] For the reasons set forth herein, the court recommends that plaintiff's motion to remand be denied, and defendant's cross-motion be granted.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On May 17, 2010, plaintiff Jennifer L. Ortega ("plaintiff") filed for Supplemental Security Income ("SSI") payments under Title XVI of the Social Security Act. (Administrative Record ("AR") 20). Shortly thereafter, plaintiff filed a claim for Social Security Disability Insurance ("SSDI") benefits under Title II. (AR 20). These 2010 claims followed plaintiff's prior applications in 2006, which the Commissioner ("defendant") denied in 2009. (AR 20). In her 2010 applications,

---

[1] Refers to the court's docket number.

plaintiff alleged her disability commenced on October 1, 2005. (AR 20). Defendant denied plaintiff's 2010 applications in the first instance, and also upon reconsideration. (AR 20).

On July 30, 2012, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons. (AR 20, 29). The ALJ issued a written decision on August 23, 2012, finding that plaintiff had "not been disabled" at any time from October 1, 2005 through the decision date. (AR 29). Plaintiff appealed, and the Appeals Council denied review. (AR 1-3). Accordingly, the ALJ's decision became the final decision of the Commissioner.

On January 27, 2014, plaintiff filed through counsel a complaint for judicial review. (#1). In her present motion, plaintiff argues that the ALJ failed to consider two years of evidence relevant only to her claim for SSI payments. (#13 at 6). Defendant concedes the error in its opposition, but argues it was harmless because the evidence to which plaintiff points supports the ALJ's finding of nondisability. (#15 at 3-6). Plaintiff responds in her reply that defendant's opposition is impermissible post-hoc justification, and that the error was harmful and therefore reversible. (#16 at 5-6).

## II. STANDARD OF REVIEW

The burden of proving disability in a claim for SSI payments rests upon the claimant. 20 C.F.R. § 416.912(a); *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423 (d)(1)(A).

This court has jurisdiction to review an ALJ's decision denying a claim for SSI payments after the plaintiff has exhausted administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161-62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it

rests on legal error or is unsupported by substantial evidence in the administrative record. *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citations omitted); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

The substantial evidence standard is not onerous: it is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (citation and quotation omitted). Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (citation omitted). The ALJ's discussion must adequately explain the decision in light of such evidence, as "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence,]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony) and the district court is "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

In reviewing for substantial evidence, the court examines the entire record, considering both evidence that supports and undermines the ALJ's decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted) ("a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'"). Where "the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (citation omitted). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

### III. DISCUSSION

**A.     SSDI and SSI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes of SSI.[2]  20 C.F.R. § 416.920(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).  Although the definitions of disability under SSDI and SSI are "virtually identical[,]" *Penny v. Sullivan*, 2 F.3d 953, 955 n.1 (9th Cir. 1993), SSDI benefits are available only to claimants with "insured status": the claimant must achieve sufficient quarters of coverage and also incur disability prior to the coverage expiration date.  42 U.S.C. §§ 416(i), 423(c); *see, e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("Because [the claimant] was only insured for disability benefits through September 30, 1999, she must establish a disability on or prior to that date.").  In contrast, SSI eligibility has no expiration date, and requires only that the claimant became disabled on or prior to the date of her SSI application.  *See, e.g.*, *Smolen v. Chater*, 80 F.3d 1273, 1278-79 (9th Cir. 1996).  The difference means that the Commissioner will sometimes consider evidence applicable only to the SSI application when the claimant seeks benefits under both SSI and SSDI (a "concurrent claim"), notwithstanding the identical disability definition.

In the sequential disability inquiry, step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i).  If so, the claimant is not disabled and the Commissioner denies the claim.  *Id*. § 416.920(b).  The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe."  *Id*. § 416.920(a)(4)(ii).  "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities.  *Id*. § 416.920(c).  The Commissioner denies the claim where the claimant lacks a severe impairment, or a severe

---

[2] The sequential process is nearly identical for SSI and SSDI claims.  As plaintiff challenges only the SSI determination, the court references only the pertinent SSI regulations.

combination thereof. *Id*. In step three, the claimant's impairment is compared to the Agency's impairment list. *Id*. § 416.920(a)(4)(iii); *see also id*. § 404, Subpt. P, App. 1 ("Listed Impairments"). Where the claimant's impairment is contained on the list, or is equivalent to the impairments expressed therein, and the claimant also meets the corresponding durational requirement, the claimant is presumed disabled. *Id*. § 416.920(d).

If the Commissioner does not find disability at step three, however, review of the claim proceeds to the fourth step: whether the claimant can perform past relevant work. *Id*. § 416.920(a)(4)(iv). The claimant is not disabled where she can engage in such work. *Id*. § 416.920(e). If the claimant cannot perform past relevant work, but the Commissioner demonstrates that the claimant is able to perform other kinds of work, the claimant is again found not disabled. *Id*. § 416.920(f). The ALJ will find the claimant can return to work if she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

In making the step four determination, the ALJ considers the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. § 416.920(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite her limitations. 20 C.F.R. § 416.945. In determining the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 416.945(a).

The burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. *Id*. § 416.960(c). If the claimant cannot do the

work she did in the past, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to "the Grids." *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999). Under either method, the ALJ must identify other occupations available in significant numbers in either the region or several regions of the United States that the claimant can perform. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c). If the ALJ establishes that the claimant's RFC allows her performance of other occupations, she is not disabled. 20 C.F.R. § 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, she is disabled. *Id*. § 416.920(g).

**B.     The ALJ followed the five-step process and concluded plaintiff was not disabled.**

In reviewing plaintiff's claims for benefits, the ALJ followed the five-step process described above. (AR 22-23). The ALJ determined plaintiff met the insured status requirements for SSDI eligibility through December 31, 2010. (AR 23). Further, the ALJ concluded that plaintiff has not engaged in substantial gainful activity since October 1, 2005, and experiences degenerative disc disease of the lumbar spine, fibromyalgia, and obesity, all of which are severe impairments under the applicable regulations. (AR 23-24). However, the ALJ determined that none of these impairments met or medically equaled the severity of a listed impairment in the relevant subpart of the regulations. (AR 24-25).

The ALJ accordingly proceeded to step four and made several findings. First, the ALJ concluded that plaintiff's RFC permits sedentary work with the following additional restrictions: frequent climbing of stairs/ramps, balancing, stooping/bending; occasional climbing of ladders/ropes/scaffolds, kneeling, crouching, and crawling. (AR 25).

Second, the ALJ held that plaintiff's statements regarding the intensity and limiting nature of her impairments were not credible to the that extent they were inconsistent with the RFC finding. (AR 26). The ALJ "partially discount[ed]" plaintiff's allegations about the limiting effects of her impairments because her statements were "1) inconsistent with treatment received; 2) out of proportion to the objective clinical findings; 3) internally inconsistent; and 4) inconsistent with daily activities." (AR 26). In some detail, the ALJ examined the administrative record, but she focused almost entirely on evidence from the period of November 24, 2009 to December 31, 2010 (plaintiff's SSDI coverage expiration date). (*See* AR 26-28).

Third, the ALJ concluded on the basis of the record that plaintiff was capable of performing her past relevant work as an office manager. (AR 28). The ALJ reached this determination by comparing plaintiff's sedentary RFC to the vocational profile of an office manager. (AR 28-29). Because plaintiff could perform past relevant work, the ALJ held that plaintiff was not disabled and denied the claims for SSDI and SSI benefits. (AR 29).

**C.     The ALJ legally erred in her step four SSI determination.**

The parties agree that the ALJ erred by failing to consider medical evidence from 2011 and 2012 when reviewing plaintiff's SSI claim. Plaintiff alleges that the ALJ "failed to discuss any of the . . . records dated after December 31, 2010[,]" which specifically concern placement and effectiveness of a spine stimulator for control of plaintiff's lower back pain. (#13 at 8). Defendant concedes the error in stating that the ALJ "omitted discussion of medical evidence after [December 31, 2010], except to note that [p]laintiff had a pain stimulator placed in her back." (#15 at 3-4) (citation omitted). After reviewing the decision and the record, the court agrees with the parties.

The ALJ's entire discussion of the 2011 and 2012 evidence consisted of three sentences: "Since the disability period, the claimant's health has further deteriorated. She has had a pain

stimulator placed in her back to regulate her symptoms. As such, I find the claimant was capable of performing a limited range of sedentary activity, not light work." (AR 27). Aside from this passage, the ALJ engaged no discussion of plaintiff's numerous medical records from the relevant time period.

The evidence was significant to the SSI determination, and the ALJ was therefore required to discuss it. *Hiler*, 687 F.3d at 1212. Eligibility for SSI requires only that the claimant establish statutory disability on or prior to the date of application. *See Smolen*, 80 F.3d at 1278-79. Hence, examination of the above described evidence was necessary to the adjudication of plaintiff's SSI claim. The briefs of the parties confirm that the omitted evidence was relevant. In its brief, defendant assesses the evidence and points to specific facts therein that "bolster[] the ALJ's determination . . . ." (#15 at 4). Plaintiff, by contrast, maintains the evidence confirms her "unremitting and debilitating" condition. (#13 at 8).

Whether the evidence supports plaintiff's or defendant's position (a point that the court discusses more fully below), "an ALJ errs when [s]he rejects a medical opinion . . . while doing nothing more than ignoring it . . . ." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014); *see also Smolen*, 80 F.3d at 1282 (finding error where the ALJ ignored medical evidence without explanation). It cannot be said that the ALJ's three sentences represents an adequate discussion. Although the ALJ is under no duty to discuss every particular detail, *Hiler*, 687 F.3d at 1212, she "must do more than offer [her] conclusions. [She] must set for [her] own interpretations and explain why they . . . are correct." *Embrey v. Bowen*, 849 F.3d 418, 421-22 (9th Cir. 1988). In light of the ALJ's failure to discuss this evidence, the court finds legal error in the step four finding of plaintiff's nondisability.

### D.     The ALJ's error was harmless.

Plaintiff requests remand or reversal because, she asserts, the ALJ's error was harmful. "[A]t a minimum[,]" plaintiff alleges, the error distorted the ALJ's credibility analysis because the plaintiff's "medical baseline must be identified before the ALJ could make the comparison as to whether a claimant's report of symptoms and functional limitations are credible." (#13 at 9). Defendant avers that the evidence supports the ALJ's finding of nondisability, and therefore the error is harmless. (#15 at 3-5).

Courts in the Ninth Circuit "will not reverse the decision of the ALJ for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Consistent with the court's duty to review the ALJ's decision for substantial evidence rather than affirm upon its own independent findings, the reviewing court must exercise caution when relying on the harmless error doctrine. *See Stout*, 454 F.3d at 1054. Yet where a reviewing court can "confidently conclude" that no reasonable ALJ would have reached a different determination by considering the omitted evidence, the ALJ's error is harmless. *Robbins*, 466 F.3d at 885.

The omitted evidence establishes the following. In January 2011, plaintiff visited Dr. Lisa Pitino at Spine Nevada for the removal of a spine stimulator that controlled plaintiff's lower back pain, which had been implanted in 2010 on a trial basis. Dr. Pitino remarked that plaintiff had enjoyed an 80-90% reduction in back pain during the trial period. (AR 687). Further, plaintiff "noticed [that] getting out of bed in the morning was easier" as a result of the device. (AR 687). Plaintiff elected for permanent placement of a spine stimulator in May 2011 (AR 769). Although she reported continued back pain in July 2011, plaintiff experienced an 80% overall improvement in her condition due to the device. (AR 763).

In September 2011, however, plaintiff saw Dr. Jonathan Burns at Spine Nevada with complaints of enduring back pain. (AR 761). Dr. Burns referred plaintiff to Dr. Thomas Rembetski for a surgical revision of the stimulator site, as plaintiff was "doing well after permanent [spine stimulator] placement" but "ha[d] irritation along the [stimulator] site." (AR 761). Additional records indicate that plaintiff's complaints owed primarily to the stimulator itself, and not the lower back pain lessened by the device. (*See* AR 755, 732) (indicating plaintiff's concern was not the device's decreasing effectiveness at controlling her pain, but instead the painful site itself). Dr. Rembetski performed plaintiff's revision surgery in December. (AR 778-79).

In the following year, plaintiff sought continued and repeated treatment for issues relating to the spine stimulator.[3] In February 2012, plaintiff visited Dr. Burns with ongoing back pain. (AR 748). Dr. Burns reprogramed the spine stimulator and the "pain was satisfactorily covered by the new programs." (AR 748). In March 2012, plaintiff returned to Dr. Burns and complained that the device itself again had become painful, and also less effective at controlling her lower back pain. (AR 742). Imaging films indicated the device had shifted. (AR 742). Dr. Burns referred plaintiff for a second surgical revision. (AR 744). Dr. James Lynch surgically repositioned the device in June. (AR 773). In an August 2012 appointment, Dr. Lynch noted that plaintiff complained about tender incisions, but also reported improved stimulator function. (AR 926). By October, however, the device had again moved, and plaintiff indicated pain in her thoracic spine, lower and mid back, stimulator site, and legs. (AR 928). In December 2012, Dr. Lynch again repositioned and reprogrammed the device. (AR 933). Two weeks following surgery, plaintiff was "doing well" and "denie[d] any new symptoms." (AR 938).

---

[3] Some of the evidence post dates the ALJ's August 23, 2012 decision. However, plaintiff submitted it to the Appeals Council and it is therefore part of the record that this court reviews. *Brewes*, 682 F.3d at 1162.

At bottom, these medical records suggest that whatever plaintiff's difficulty with maintaining the stimulator's initial efficacy, the device ameliorated (to varying extents) her underlying lower back pain.  The records contain no indication that plaintiff's condition worsened in 2011 and 2012, or that the stimulator was less effective at treating plaintiff's back pain than measures examined by the ALJ prior to December 31, 2010.  Relatedly, Plaintiff's physical exam records during this time period indicate that her functional abilities did not markedly change.  (*Compare* AR 479, 483, 488, 495 *with* AR 743, 747, 752-53, 756, 760, 764-65, 929).

Accordingly, the court finds the ALJ's error harmless.  None of the omitted evidence at issue in this case persuades the court that the ALJ reasonably could have reached a different determination as to plaintiff's SSI claim.  Plaintiff urges the court to find a harmful error on the basis of the ALJ's credibility determination, but the argument succeeds only if the evidence could have modified plaintiff's medical baseline.  (*See* #13 at 9).  If the evidence plainly shows plaintiff's medical baseline was unchanged, the ALJ's failure is without consequence.  As detailed, the records from 2011 and 2012 do not indicate a change in plaintiff's condition or impairments, and consideration of the omitted evidence thus makes no difference to the ultimate disability determination.  Therefore, the error is harmless, *Tomasetti*, 533 F.3d at 1038, for no reasonable ALJ could reach a different determination.  *Robbins*, 466 F.3d at 885.

Further, despite failing to adequately consider and discuss the evidence, the ALJ apparently accounted for the possibility that it might indicate a deterioration of plaintiff's condition.  (AR 27).  The ALJ examined plaintiff's RFC under the sedentary standard, rather than the light standard directed by the evidence.  (AR 27).  Assuming for argument that the new evidence demonstrates a marked deterioration in plaintiff's condition—a conclusion the evidence does not support, as revealed by the court's examination and discussion of the evidence—the ALJ nevertheless

concluded that plaintiff remains able to perform past relevant work under the more-limiting sedentary standard. (AR 27). Plaintiff has failed to carry her burden of articulating how, precisely, the omitted evidence is harmful, because she has not demonstrated that the evidence directed a more restrictive RFC finding than the sedentary standard applied by the ALJ. *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (discussing the burden upon the party claiming error imposed by *Shinseki v. Sanders*, 556 U.S. 396 (2009)). In sum, the omission was inconsequential, and the court is satisfied that the ALJ's determination of plaintiff's nondisability is supported by substantial evidence. *Hill*, 698 F.3d at 1159; (*See* AR 25-28) (ALJ's consideration of the pre-2011 evidence).

## IV. CONCLUSION

The court concludes that substantial evidence in the record supported the ALJ's determination of nondisability. Although the ALJ erred with respect to her consideration of evidence at step four of plaintiff's SSI claim, the error is harmless because the omitted evidence could not have reasonably changed the ALJ's determination. Therefore, the court recommends that plaintiff's motion for remand and/or reversal (#13) be denied and that defendant's cross-motion to affirm (#14) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand and/or reversal (#13) be **DENIED** and defendant's cross-motion to affirm (#14) be **GRANTED**.

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** accordingly and close this case.

**DATED:** October 2, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**